IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jesse John Ofsharick,             :
           Appellant       :
                        :     No. 1094 C.D. 2017
           v.             :
                        :     Submitted: March 14, 2019
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing      :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: April 4, 2019

Jesse John Ofsharick (Licensee) appeals from the July 17, 2017 order of the Court of Common Pleas of Montgomery County (trial court) denying his appeal from a one-year suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), under section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. §1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1]

---

[1] Section 1547(b)(1)(i) reads, in pertinent part, as follows:

> (1) If any person placed under arrest for a violation of section 3802 [relating to driving under the influence of alcohol or a controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police

**(Footnote continued on next page…)**

**Facts and Procedural History**

The underlying facts of this case are not in dispute. On December 9, 2016, Officer Stephen Nick of the Upper Dublin Police Department responded to a 9-1-1 call from a woman who stated that her boyfriend, Licensee, had struck her in the face and fled in their car. The woman provided Officer Nick with a description of the car. Shortly thereafter, police officers from a neighboring municipality, Horsham Township, had received a call concerning an intoxicated individual who had been driving a car that matched the description given to Officer Nick. Officer Nick later learned that Licensee had driven to a nearby Wawa, where Licensee was placed under arrest by officers from Horsham Township for public drunkenness and disorderly conduct. Officer Nick proceeded to the Wawa and found Licensee in a Horsham Township police car. He described Licensee as extremely agitated and uncooperative, slurring his speech, and yelling insults. (Trial court op. at 1-2.)

Officer Nick, believing that Licensee was intoxicated, advised Licensee that he was also under arrest for driving under the influence and read him the DL-26B form warnings.[2] (Trial court op. at 2.) Licensee responded that he was "taking the

---

**(continued…)**

officer, the department shall suspend the operating privilege of the person as follows:

> (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

[2] As will be discussed below, the DL-26B form is used by law enforcement when requesting chemical testing of blood. Licensee is not challenging whether Officer Nick read him the warnings contained in this form.

2

Fifth and wanted to call a lawyer." *Id.* He never consented to a chemical test. Officer Nick then took custody of Licensee and transported him to the Upper Dublin police station. Throughout the entire encounter with police officers, Officer Nick described Licensee as "belligerent, uncooperative and . . . pulling away from us, turning and making movements that could be inferred as either aggressive or resistive." *Id.* As a result of this behavior, Officer Nick did not feel safe in conducting field sobriety tests at that time. *Id.*

By notice mailed December 22, 2016, DOT advised Licensee that his operating privilege was being suspended for a period of one year under section 1547(b)(1)(i) of the Vehicle Code as a result of his failure to submit to chemical testing. Licensee filed a statutory appeal with the trial court. The trial court conducted a hearing on July 17, 2017.[3] At this hearing, DOT submitted into evidence, without objection, a certified packet of documents, which included the December 22, 2016 notice of suspension, the DL-26B form read to Licensee and signed by Officer Nick, and Licensee's driving history. DOT thereafter presented the testimony of Officer Nick, who related the above-described events.

Officer Nick noted that officers in Horsham Township had received a call regarding Licensee only six minutes after he responded to the domestic assault call by Licensee's girlfriend. (Reproduced Record (R.R.) at 13a.) He also noted that the Wawa was only approximately three miles from the scene of the domestic assault call. *Id.* After speaking with the other 9-1-1 caller that initiated the response of police officers in Horsham Township and his supervisors, it was decided that Officer Nick would take custody of Licensee and transport him back to the Upper Dublin police station. (R.R. at 17a-18a.) Officer Nick then identified the DL-26B form that

_____

[3] Licensee's suspension was automatically stayed pending the outcome of the hearing.

3

he read to Licensee upon his arrest at the neighboring Wawa, which requested that Licensee submit to chemical testing. However, Officer Nick testified that Licensee refused to submit to testing. (R.R. at 19a.)

Licensee did not cross-examine Officer Nick or offer any other testimony or evidence. Rather, Licensee proceeded to argue that section 1547 was unconstitutional in light of the United States Supreme Court's June 23, 2016 decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016).[4,5] Licensee recognized that in *Boseman v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017), this Court held that *Birchfield* had no bearing on civil license suspensions under the Implied Consent Law, but he wanted to preserve the argument.

The trial court took the matter under advisement and closed the hearing. By order of the same date, the trial court denied Licensee's appeal and reinstated the one-year suspension of Licensee's operating privilege. Licensee filed a notice of appeal with the trial court. By order dated September 21, 2017, the trial court granted Licensee's request for a supersedeas pending resolution by this Court.

One week later, on September 28, 2017, the trial court issued an opinion in support of its order. The trial court concluded that Officer Nick had reasonable grounds to request that Licensee submit to chemical testing, citing the statements

---

[4] In *Birchfield*, the United States Supreme Court held that the testing of blood, as opposed to the testing of breath, requires a warrant, and that a state cannot impose criminal penalties on a motorist for refusing to submit to blood testing. Subsequent to *Birchfield*, DOT created separate DL-26 forms, one for breath tests and another for blood tests, the latter identified as form DL-26B. In July 2017, the General Assembly amended sections 1547(b)(2)(ii) and 3804(c) of the Vehicle Code, 75 Pa.C.S. §§1547(b)(2)(ii), 3804(c), consistent with the holding in *Birchfield*, to clarify that enhanced criminal penalties could be imposed only for refusing to submit to a chemical <u>breath</u> test.

[5] Licensee raised an additional argument concerning the lack of any objective evidence that he was operating a motor vehicle while intoxicated.

4

made by Licensee's girlfriend in the domestic assault incident, the other 9-1-1 caller in Horsham Township, and the responding officers in Horsham Township. The trial court stated that such statements were properly admissible under *Duffy v. Department of Transportation, Bureau of Driver Licensing*, 694 A.3d 6 (Pa. Cmwlth. 1997) (holding that out of court third-party statements are admissible to establish the reasonable grounds of an investigating officer). The trial court also concluded that Licensee's actions and statements demonstrated an "unwillingness to take a blood test" and, thus, constituted a refusal. (Trial court op. at 5.) Finally, based on *Boseman*, the trial court concluded that *Birchfield* had no application to this case.

## Discussion

On appeal,[6] Licensee argues that the trial court erred in denying his appeal where DOT failed to establish that Officer Nick informed Licensee that he would be subject to enhanced criminal penalties under section 3804(c) of the Vehicle Code for refusing to submit to chemical testing. We disagree.

In order to support a suspension of Licensee's operating privilege under section 1547(b)(1) of the Vehicle Code, DOT had the burden of proving the following:

> (1) Licensee was arrested for violating Section 3802 of the Vehicle Code by a police officer who had "reasonable grounds to believe" that Licensee was operating or was in actual physical control of the movement of a vehicle while in violation of Section 3802 (i.e., while driving under the influence); (2) Licensee was asked to submit to a chemical

---

[6] Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Piasecki v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1067, 1070 (Pa. Cmwlth. 2010).

test; (3) Licensee refused to do so; and (4) Licensee was specifically warned that a refusal would result in the suspension of his operating privileges and would result in enhanced penalties if he was later convicted of violating Section 3802(a)(1).

*Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). The testimony of Officer Nick satisfied DOT's burden herein.

Licensee's argument is limited to the fourth prong above. In that regard, the DL-26B form that Officer Nick read to Licensee contained the following warnings:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(R.R. at 38a.) This DL-26B form contained no warning advising Licensee that a refusal to submit to chemical testing could result in enhanced criminal penalties upon conviction of driving under the influence, as required by then-section 1547(b)(2)(ii) of the Vehicle Code. Prior to the July 2017 amendment, this section provided that "if

6

the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties)." *Former* 75 Pa.C.S. §1547(b)(2)(ii). The 2017 amendment inserted the term "breath" between the terms "chemical" and "testing."

Licensee argues that if the warnings provided by Officer Nick had properly advised him that he might be subject to enhanced criminal penalties if he refused the chemical testing, he may have submitted to the testing. However, Licensee concedes that this Court previously considered and rejected an identical argument in *Garlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030 (Pa. Cmwlth. 2018) (*en banc*). Licensee requests that we overrule *Garlick*, which is something this panel cannot do,[7] and notes that he merely seeks to preserve this issue for further appeal to our Supreme Court.[8]

In *Garlick*, a Pennsylvania State Police Trooper had reason to believe that the licensee had operated a motor vehicle while under the influence of alcohol. Following a field sobriety test, the licensee was asked and refused to consent to a breath test. The Trooper placed the licensee under arrest on suspicion of DUI and transported him to the police station. At the station, the Trooper requested that the licensee submit to a chemical test of his blood and read verbatim the warnings contained in the DL-26B form, the same warnings provided to Licensee in the present case. The Trooper did not warn the licensee that he would be subject to enhanced criminal penalties under section 3804(c) for refusing the chemical blood testing, despite the requirement of former section 1547(b)(2)(ii).

---

[7] Pursuant to Pa.R.A.P. 3103(b), "An opinion of the court en banc is binding on any subsequent panel of the appellate court in which the decision was rendered."

[8] Our decision in *Garlick* was not appealed to the Supreme Court.

Following DOT's notice to the licensee of a one-year suspension of his operating privilege, the licensee appealed to the common pleas court. Before that court, the licensee argued that his operating privilege could not be suspended because the Trooper failed to warn him that he would be subject to enhanced criminal penalties for refusing the chemical blood test. The licensee further argued that police officers must comply with the mandates of former section 1547(b)(2)(ii) until such time as the General Assembly amended the statute. The common pleas court denied the licensee's appeal and reinstated his suspension. On further appeal, this Court affirmed the common pleas court's order.

In rejecting the identical argument currently before this Court as unpersuasive, we explained as follows:

> Following *Birchfield*, and as the Superior Court concluded thereafter, a licensee **cannot** be criminally punished for refusing a police officer's request to test his blood pursuant to the Implied Consent Law. Although, at the time Trooper requested that [l]icensee submit to a blood test, Section 1547(b)(2)(ii) still required a warning that a licensee would be subject to enhanced criminal penalties under Section 3804(c) for refusing a test of his blood, [l]icensee could not, as a matter of constitutional law, be subject to such penalties. Stated simply, enhanced criminal penalties were not a consequence of [l]icensee's refusing the requested blood test. Licensee's argument is, in effect, that because the General Assembly did not immediately amend Section 1547(b)(2)(ii), DOT and the police had to continue to apply Section 1547(b)(2)(ii). However, **the effect of *Birchfield* and the Superior Court cases that followed was to render the criminal penalties warned of in Section 1547(b)(2)(ii) as applied to blood testing unenforceable and to effectively sever that section from the rest of the Vehicle Code**.
>
> . . .

> [W]hat [l]icensee seems to suggest is that, in order for his license suspension to be valid, Trooper had to violate [l]icensee's Fourth Amendment rights by warning [l]icensee about the no-longer enforceable enhanced criminal penalties because Section 1547(b)(2)(ii) still required that warning. This constitutional violation, according to [l]icensee's interpretation of these cases, would have no impact on his license suspension and, therefore, there was no reason for common pleas to consider *Birchfield* in this proceeding. To put it simply, [l]icensee's argument encourages officers to violate licensees' Fourth Amendment rights thereby jeopardizing their criminal prosecutions in order to comply with Section 1547(b)(2)(ii) even though the criminal penalty in the warning is no longer enforceable and, therefore, no longer a consequence of refusing a blood test. We cannot countenance such an argument.

*Garlick*, 176 A.3d at 1036-37 (emphasis added). Finally, we concluded that the "Trooper specifically and accurately warned [l]icensee about the consequences of refusing a blood test that remain following *Birchfield*, that is, the suspension of his license." *Id.* at 1037.

Similarly here, Officer Nick specifically and accurately warned Licensee of the consequences of refusing a blood test that remained following *Birchfield*, namely a suspension of his license. Consistent with *Garlick*, the fact that Officer Nick failed to advise Licensee of enhanced criminal penalties for refusing a blood test that have since been determined to be constitutionally infirm does not invalidate the one-year suspension of Licensee's operating privilege imposed by DOT under section 1547(b)(1)(i) of the Vehicle Code.

Accordingly, the trial court's order denying Licensee's appeal and reinstating his suspension is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jesse John Ofsharick,      :
     Appellant    :
            :  No. 1094 C.D. 2017
     v.      :
            :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing    :

## ***ORDER***

AND NOW, this 4th day of April, 2019, the order of the Court of Common Pleas of Montgomery County, dated July 17, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge